**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DILLON MARCUSSE; EDWARD MISKIE; PHILIP
PORTOLANO; and ADAM SPERANDIO,
individually and on behalf of all others similarly
situated,

Plaintiffs,

v.

CITIZENS ARTS CLUB, INC. d/b/a/ NORWOOD;
ALAN LINN, individually and as an Officer,
Director, and/or Principal of NORWOOD; and
CAMILLE PARSON, individually and as an Officer,
Director, and/or Principal of NORWOOD,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.: 19-CV-8379

**COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiffs DILLON MARCUSSE ("Marcusse"); EDWARD MISKIE ("Miskie"); PHILIP PORTOLANO ("Portolano"); and ADAM SPERANDIO ("Sperandio") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief against Defendants CITIZENS ARTS CLUB, INC. d/b/a/ NORWOOD ("Norwood"); ALAN LINN ("Linn"), individually and as an Officer, Director, and/or Principal of NORWOOD; and CAMILLE PARSON ("Parson"), individually and as an Officer, Director, and/or Principal of NORWOOD, for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*; the New York Labor Law ("NYLL"); the New York Codes, Rules and Regulations ("NYCRR"); the Family Medical Leave Act 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); the Americans With Disabilities Act 42 U.S.C. §§ 12101 *et seq.* ("ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the New York State

Human Rights Law ("NYSHRL"); the New York City Human Rights Law ("NYCHRL"); and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is a putative collective and class action brought by Plaintiffs challenging acts committed by Defendants against Plaintiffs and those similarly situated, which amount to violations of federal and state wage and hour laws.

2.      Defendant Norwood is a traditional gentlemen's club located in New York, New York that provided food and drink services to its members and non-members.

3.      Defendants employed Plaintiffs Marcusse, Portolano, and Sperandio and all other persons similarly situated as Bartenders, Servers, and Bar-Backs (collectively with Plaintiffs Marcusse, Portolano, and Sperandio, "Tipped Employees"), who provided food and drink services for Defendants' customers.

4.      Defendants employed Plaintiff Miskie and all other persons similarly situated as Front Desk Employees (collectively with Plaintiff Miskie, "FD Employees"), who provided telephone answering services for Defendants and checked guests in and out of Defendant Norwood's facility.

5.      First, pursuant to 29 U.S.C. § 216(b), Plaintiffs Marcusse, Portolano, and Sperandio bring this action on behalf of themselves and a collective of persons who are and were employed by Defendants as Bartenders, Servers, and Bar-Backs during the past three (3) years through the final date of the disposition of this action who were not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek and  are entitled to recover: (i) unpaid and incorrectly paid wages; (ii) unpaid overtime wages; (iii)

liquidated damages; (iv) interest; (v) attorneys' fees and costs; and (vii) such other and further relief as this Court finds necessary and proper.

6.      Second, pursuant to 29 U.S.C. § 216(b), Plaintiffs brings this action on behalf of themselves and a collective of persons who are and were employed by Defendants as Bartenders, Servers, Bar-Backs, and Front Desk Employees during the past three (3) years through the final date of the disposition of this action who were not paid the federal minimum wage for all hours worked per workweek during their training periods and are entitled to recover: (i) unpaid and incorrectly paid wages; (ii) unpaid minimum wages; (iii) liquidated damages; (iv) interest; (v) attorneys' fees and costs; and (vi) such other and further relief as this Court finds necessary and proper.

7.      Third, Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and class of persons who are and were employed by Defendants as Bartenders, Servers, Bar-Backs, and Front Desk Employees during the past six (6) years through the final date of the disposition of this action who were: (i) subject to unlawful wage deductions; (ii) not paid all of their owed wages on their regularly scheduled paydays; (iii) not paid New York State's minimum wage for all hours worked per workweek during their training periods; (iv) not paid anything for taking mandatory take home quizzes; (v) not paid the "spread of hours" pay for each day worked in excess of ten (10) hours; (vi) not paid that the "call-in" pay for each day they reported for duty; and/or (vii) not issued the proper wage statements and notices pursuant to the NYLL, which violates the NYLL and the NYCRR and are entitled to recover: (i) minimum wages (ii) unpaid, deducted, and incorrectly paid wages; (iii) unpaid "spread of hours" pay; (iv) unpaid "call-in" pay; (v) liquidated damages; (vi) penalties; (vii) interest; (viii) attorneys' fees and costs; and (ix) such other and further relief as this Court finds necessary and proper.

3

8.      Fourth, Plaintiffs Marcusse, Portolano, and Sperandio bring this action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and class of persons who are and were employed by Defendants as Bartenders, Servers, and Bar-Backs during the past six (6) years through the final date of the disposition of this action who were: (i) not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) not paid all wages promised to them by Defendants for working events; and/or (iii) not paid all earned tips/gratuities, which violates the NYLL and the NYCRR and are entitled to recover: (i) unpaid, deducted, and incorrectly paid wages; (ii) unpaid overtime; (iii) unpaid tips/gratuities; (iv) liquidated damages; (v) penalties; (vi) interest; (vii) attorneys' fees and costs; and (viii) such other and further relief as this Court finds necessary and proper.

9.      Fifth, Plaintiff Marcusse individually brings this action pursuant to the FMLA, the ADA, Title VII, the NYSHRL, and the NYCHRL for discrimination, retaliation, and FMLA leave interference and is entitled to recover (i) back pay; (ii) front pay; (iii) emotional damages; (iv) punitive damages; (v) liquidated damages; (vi) interest; (vii) attorneys' fees and costs; and (viii) such other and further relief as this Court finds necessary and proper.

10.     Sixth, Plaintiff Portolano individually brings this action pursuant to the NYLL for retaliation and is entitled to recover (i) back pay; (ii) liquidated damages; (iii) interest; (iv) attorneys' fees and costs; and (v) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this

Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. §§ 201 *et seq.*; (iv) under 29 U.S.C. §§ 2601 *et seq.*; (v) 42 U.S.C. §§ 2000e *et seq.*; and (vi) under 42 U.S.C. §§ 12101.

12.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq.*, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business, and reside in this district.

13.     The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

14.     At all relevant times, Plaintiff Marcusse was an "employee" within the meaning of the FLSA, the NYLL, the NYCRR, the FMLA, the ADA, Title VII, the NYSHRL, the NYCHRL, and currently resides in New York, New York.

15.     At all relevant times, Plaintiff Miskie was an "employee" within the meaning of the FLSA, the NYLL, and the NYCRR and currently resides in New York, New York.

16.     At all relevant times, Plaintiff Portolano was an "employee" within the meaning of the FLSA, the NYLL, and the NYCRR and currently resides in Queens, New York.

17.     At all relevant times, Plaintiff Sperandio was an "employee" within the meaning of the FLSA, the NYLL, and the NYCRR and currently resides in Brooklyn, New York.

18.     Upon information and belief, Defendant Norwood is a privately owned business organized under the laws of the state of New York and has its principal place of business at 240 W 14th Street, New York, New York 10011.

19.     Defendant Norwood transacted and continues to transact business in New York and within New York County by employing Plaintiffs and all those similarly situated as Tipped and FD Employees.

20.     Defendant Norwood has at all relevant times been an "employer" covered by the FLSA, the NYLL, the NYCRR, the FMLA, Title VII, the ADA, the NYSHRL, and the NYCHRL.

21.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Norwood exceeds $500,000.00 and thus subjects Defendant Norwood to the FLSA.

22.     Upon information and belief, Defendant Norwood is engaged in interstate commerce. This independently subjects Defendant Norwood to the FLSA.

23.     Upon information and belief, Defendant Norwood has employed at least fifty (50) employees from January 1, 2018 to present.

24.     Although Defendant Norwood advertises as a "private" club, it allows non-members to hosts events such as weddings at its facility.

25.     Upon information and belief, to become a member of Defendant Norwood, an applicant does not require the recommendation of another member.

26.     Membership at Defendant Norwood is not exclusive to certain industries.

27.     Non-members are allowed to enter and dine at Defendant Norwood's facility.

28.     Tipped Employees were able to refer non-members for membership.

29.     Accordingly, Defendant Norwood is not a "private club" as defined by the ADA.

30.     Defendant Norwood has approximately 1,000 members.

31.     Upon information and belief, Defendant Linn is the President, Chief Executive Officer, Owner, and/or Principal of Defendant Norwood.

32.     Upon Information and belief, Defendant Linn resides in New York County, New York and transacted business in New York and within New York County by employing Plaintiffs and those similarly situated as Tipped and FD Employees.

33.     Defendant Linn has at all relevant times been an "employer" covered by the FLSA, the NYLL, the NYCRR, and the FMLA.

34.     Defendant Linn has the power to hire and fire Tipped and FD Employees.

35.     Defendant Linn has the power to set the Tipped and FD Employees' schedule, pay rate, and pay basis.

36.     Defendant Linn maintains Tipped and FD Employees' employment records such as pay and hiring records.

37.     Defendant Linn has the power to control the terms and conditions of Tipped and FD Employees' employment.

38.     Upon information and belief, Defendant Parson is Defendant Norwood's Director of Operations.

39.     Upon Information and belief, Defendant Parson resides in New York County, New York and transacted business in New York and within New York County by employing Plaintiffs and those similarly situated as Tipped and FD Employees.

40.     Defendant Parson has at all relevant times been an "employer" covered by the FLSA, the NYLL, the NYCRR, and the FMLA.

41.     Defendant Parson has the power to hire and fire Tipped and FD Employees. For example, Defendant Parson terminated Plaintiff Marcusse.

42.     Defendant Parson has the power to set the Tipped and FD Employees' schedule, pay rate, and pay basis.

43.     Defendant Parson maintains Tipped and FD Employees' employment records such as pay and hiring records.

44.     Defendant Parson has the power to control the terms and conditions of Tipped and FD Employees' employment.

45.     Defendants jointly employed Plaintiffs and those similarly situated by employing or acting in the interest of employer towards Plaintiffs and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation and by suffering all those similarly situated employees to work.

46.     From the beginning of the relevant time period to the present, Defendants have employed at least a total of forty (40) Tipped and FD employees combined.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

47.     Plaintiff Marcusse who has herein alleged claims pursuant to Title VII and the ADA has timely filed a complaint of discrimination with the EEOC.

48.     Plaintiff Marcusse has requested his Notice of Right to Sue letter from the EEOC for the alleged Title VII and ADA claims herein within ninety (90) days of the filing of this Complaint.

## STATEMENT OF FACTS

**I.      General Facts.**

49.     Defendants employed Plaintiffs and all those similarly situated as hospitality industry employees.

50.    In or around July 2018, Plaintiff Marcusse began his employment for Defendants as a Bartender.

51.    Plaintiff Marcusse remained employed as Bartender until his employment with Defendants ended in June 2019.

52.    Prior to his employment with Defendants, Plaintiff Marcusse worked as a Bartender for approximately three (3) years.

53.    In or around October 2018, Plaintiff Portolano began his employment for Defendants as a Server.

54.    Plaintiff Portolano remained employed as Server until his employment with Defendants ended in January 2019.

55.    Prior to employment with Defendants, Plaintiff Portolano worked as a Server for approximately six (6) years.

56.    In or around March 2018, Plaintiff Sperandio began his employment for Defendants as a Bartender.

57.    Plaintiff Sperandio remained employed as Bartender until his employment with Defendants ended in December 2018.

58.    In or around January 2016, Plaintiff Miskie began his employment for Defendants as a Front Desk Employee.

59.    Plaintiff Miskie remained employed as Front Desk Employee until his employment with Defendants ended in March 2018.

60.    Tipped Employees' job duties included, but were not limited to, taking drink and food orders, clearing used plates and glassware, delivering food and drinks orders, and preparing drink orders.

61.    FD Employee's job duties included, but were not limited to, answering telephone calls and checking-in/out guests of Defendant Norwood's facility.

62.    Tipped and FD Employees were employed to serve Defendants' guests during both non-events and events at Defendant Norwood's Facility.

63.    Tipped and FD Employees performed the same job duties when working non-events and events. For example, Tipped Employees took drink/food orders and served drink/food orders during both non-events and events.

64.    Tipped and FD Employees' had irregular schedules that varied from week-to-week. For example, they could work five (5) days one week and one (1) day the following week.

65.    Tipped and FD Employees clocked-in and out via a computerized application called "Square." Tipped employees also recorded their time worked in a handwritten time log book.

66.    Tipped and FD Employees were compensated on an hourly basis.

67.    Defendants took a tip credit for Tipped Employees when they worked non-events.

68.    Defendants required Tipped Employees to participate in a tip pool for both non-events and events.

69.    Defendants compensated Tipped and FD Employees via a weekly check, which was supposed to be issued every Friday pursuant to Defendants' policy.

70.    Upon information and belief, Tipped and FD Employees' workweek was Monday through Sunday.

71.    Tipped and FD Employees' pay period was Monday through Sunday.

72.    Tipped and FD Employees typically worked in excess of forty (40) hours per workweek and in excess of ten (10) hours per workday.

73.     Plaintiffs each worked in excess of forty (40) hours per workweek at least once during the relevant time period.

74.     Plaintiffs each worked in excess of ten (10) hours per workday at least once during the relevant time period.

75.     Throughout the relevant time period, Defendants implemented numerous wage-and-hour policies that violated of the FLSA, the NYLL, and the NYCRR.

## II.    DEFENDANTS' WAGE-AND-HOUR LAW VIOLATIONS COMMON TO BOTH TIPPED AND FD EMPLOYEES.

### a.    Defendants' Failure to Pay Wages/Unlawful Pay Deductions.

76.     Throughout the relevant time period, Tipped and FD Employees' payday was every Friday.

77.     Throughout the relevant time period, Defendants failed to pay/withheld Tipped and FD Employees' wages in two (2) different ways.

78.     First, throughout the relevant time period, Defendants frequently did not pay Tipped and FD Employees all their owed wages on their regularly scheduled paydays.

79.     Accordingly, Defendants frequently shorted Tipped and FD Employees' wages on their scheduled paydays.

80.     Tipped and FD Employees were required to complain of their shorted wages to Defendants in order to receive their remaining owed wages. If Defendants did pay the remainder of the owed wages, it was frequently not until after the scheduled payday elapsed.

81.     For example, Plaintiff Marcusse was not paid all of his owed wages for the workweek of March 18, 2019 through March 24, 2019, which he complained about on April 3, 2019. Plaintiff Marcusse was then issued the remainder of his wages on April 5, 2019—a week after the scheduled payday that the wages were due.

82.     As for another example, Plaintiff Miskie was not paid all of his owed wages for the workweek of July 4, 2016 through July 19, 2016, which he complained about on July 14, 2016. Upon information and belief, Plaintiff Miskie was then issued the remainder of his wages on July 18, 2016—three (3) days after the scheduled payday that the wages were due.

83.     Upon information and belief, if Tipped and FD Employees did not complain, they were never paid the remainder of their shorted wages.

84.     Second, throughout the relevant time period, Defendants required Tipped and FD Employees to take quizzes at home for which they were not compensated for.

85.     These quizzes were comprised of questions regarding guest services procedures, food menus, and drink menus.

86.     The quizzes typically took four (4) hours to complete and Tipped and FD Employees were given a week to complete them.

87.     The quizzes were primarily for the benefit of Defendants.

88.     Accordingly, throughout the relevant time period, Defendants withheld wages/failed to pay Tipped and FD Employees all their owed wages on their regularly scheduled paydays in violation of NYLL § 191, NYLL § 193, and NYCRR § 146-2.7.

b.  Defendants' Failure to Pay the Federal and New York State Minimum Wage.

89.     Throughout the relevant time period, Tipped and FD Employees were required to engage in training at the start of their employment for Defendants.

90.     The training period consisted of approximately four (4), four (4) hour shifts.

91.     Tipped and FD Employees' training took place during their regular work hours.

92.     Throughout the relevant time period, training was mandatory and was directly related to the Tipped and FD Employees' positions.

93.     For example, during training, the Tipped and FD Employees were taught Defendants' business, how to serve their guests, and Defendants' policies and procedures.

94.     Tipped and FD Employees also performed their regular job duties during training such as serving guests and taking their orders.

95.     Throughout the relevant time period, Defendants, however, never compensated Tipped and FD Employees anything for their time spent training.

96.     In fact, Defendants specifically stated that that training was "unpaid" to newly hired Tipped and FD Employees.

97.     Throughout the relevant time period, Tipped and FD Employees were only eligible to receive wages after their training period concluded.

98.     Accordingly, throughout the relevant time period, Defendants failed to pay Tipped and FD Employees both the federal and New York State minimum wage for all hours worked per workweek during their training periods in violation of FLSA § 206, NYLL § 652, and NYCRR § 146-1.2.

     c.  Defendants' Failure to Pay "Spread of Hours" Pay.

99.     Throughout the relevant time period, Tipped and FD Employees frequently worked in excess of ten (10) hours per workday.

100.    Throughout the relevant time period, Defendants promised to pay Tipped and FD Employees at rate of one and a half (1½) times New York State's minimum hourly rate for all hours worked in excess of ten (10) hours per workday.

101.    Although Defendants promised Tipped and FD Employees an increased hourly wage for working ten (10) or more hours per workday, throughout the relevant time period,

Defendants failed to pay Tipped and FD Employees the statutorily required "spread of hours" pay for each day worked in excess of (10) hours.

102.    For example, during the workweek of October 8, 2018 to October 14, 2018, Plaintiff Marcusse worked one shift that was approximately 10.28 hours in duration. Defendants, however, failed to compensate Plaintiff Marcusse the statutorily required "spread of hours" pay for this workday.

103.    As for another example, during the workweek of March 13, 2017 to March 19, 2017, Plaintiff Miskie worked one shift that was approximately 10.52 hours in duration. Defendants, however, failed to compensate Plaintiff Miskie the statutorily required "spread of hours" pay for this workday.

104.    Accordingly, Defendants' failure to properly pay Tipped and FD Employees' the "spread of hours" pay was in violation of the NYLL and NYCRR § 146.1.6.

        d.    Defendants' Failure to Pay "Call-In" Pay.

105.    As stated above, Tipped and FD Employees worked irregular schedules such that their schedules varied from week-to-week.

106.    For example, a Tipped or FD Employee may work five (5) days one week and two (2) days the following week. As for another example, a Tipped or FD Employee may work Monday through Wednesday one week and Thursday through Saturday the following week.

107.    Throughout the relevant time period, Defendants required Tipped and FD Employees to attend meetings on their days off. After the meeting concluded, the Tipped and FD Employees who were not scheduled to work that day were sent home.

108.    These meetings typically lasted less than three (3) hours.

109.    Defendants, however, did not pay Tipped and FD Employees the statutorily required "call-in" pay for meetings.

110.    Additionally, throughout the relevant time period, Tipped Employees frequently reported for duty at Defendants' facility on their scheduled workday ready to work and were sent home upon arrival due a lack of a need for their services.

111.    Throughout the relevant time period, Defendants did not compensate Tipped Employees anything, including the statutorily required "call-in" pay, when they sent Tipped Employees home after reporting for duty on their scheduled workdays.

112.    Throughout the relevant time period, Defendants frequently did not provide more than a twenty-four (24) hour notice of the canceled shift. In fact, throughout the relevant time period, Defendants often did not provide any notice of the cancelled shift until after the Tipped Employee arrived at Defendants' facility.

113.    Accordingly, Defendants' failure to pay Tipped and FD Employees "call-in" pay was in violation of NYCRR § 146-1.5.

> e.    Defendants' Failure to Furnish Proper Wage Statements and Notices.

114.    As a result of all of the aforementioned wage-and-hour law violations, throughout the relevant time period, Defendants failed to furnish FD and Tipped Employees a wage statement that included their accurate wages and their hours worked with each paycheck.

115.    Throughout the relevant time period, Defendants also failed to include Defendant Norwood's telephone number on the wage statements issued to FD and Tipped Employees.

116.    Additionally, Defendants issued Tipped Employees two (2) pay notices, which failed to include the requisite notices pursuant to the NYLL.

117.    The first pay notice did not include a "tip allowance" notice. Nor did it include that Tipped Employees would be paid a higher hourly wage for working events. Rather, it only inaccurately stated that Tipped Employees would receive New York State's minimum hourly rate of pay.

118.    The second pay notice failed to include Defendant Norwood's telephone number.

119.    Upon information and belief, throughout the relevant time period, Defendants never issued Tipped  and FD Employees the proper wage statements and notices pursuant to NYLL § 195.

120.    Accordingly, Defendants' failure to issue the proper wage statements and notices was in violation of NYLL § 195.

## III.    DEFENDANTS' WAGE-AND-HOUR LAW VIOLATIONS SPECIFIC TO TIPPED EMPLOYEES.

### a.    Defendants' Pay Scheme For Tipped Employees.

121.     Prior to December 31, 2018, Defendants issued Tipped Employees a pay notice which promised that they were to be paid New York State's minimum wage for all hours worked per workweek under forty (40) and one and a half (1½) times New York State's minimum wage for all hours worked in excess of forty (40) when working non-events.

122.    It also promised that Tipped Employees would be paid one and a half (1½) times New York State's minimum wage for each hour worked in excess of ten (10) hours per workday.

123.    The pay notice further promised that, when working events, Tipped Employees would receive an hourly wage based upon the 20% service charge that was charged to Defendants' customers for event bookings. The minimum hourly wage they were promised to receive was $30.00 per hour. Thus, if the allocation of the entire 20% service charge equated to an hourly rate

less than $30.00 per hour, Tipped Employees were to receive $30.00 per hour. The pay notice stated nothing further regarding event pay.

124.    After December 30, 2018, Defendants instituted a new pay notice to Tipped Employees, which similarly promised they were to be paid New York State's minimum wage for all hours worked per workweek under forty (40) and one and a half (1½) times New York State's minimum wage for all hours worked in excess of forty (40) when working non-events.

125.    It also promised that Tipped Employees would be paid one and a half (1½) times New York State's minimum wage for each hour worked in excess of ten (10) hours per workday.

126.    This new pay notice, however, changed how Tipped Employees were paid for working events. For example, it no longer promised that Tipped Employees would be paid an hourly wage based upon the 20% service charge. Instead, it promised that Tipped Employees would receive a minimum hourly wage of $30.00 per hour and that Defendants may pay Tipped Employees an increased hourly wage at their sole discretion.

127.    The new pay notice additionally stated that Tipped Employees were no longer entitled to any of the 20% service charge.

   b.   Defendants' Failure to Pay Overtime.

128.    Throughout the relevant time period, Tipped Employees routinely worked in excess of forty (40) hours per workweek.

129.    Throughout the relevant time period, as stated above, Tipped Employees were paid two (2) different rates of pay for working non-events and events.

130.    Throughout the relevant time period, working both non-events and events in the same workweek typically resulted in Tipped Employees working in excess of forty (40) hours per workweek.

17

131.    Throughout the relevant time period, Defendants did not compensate Tipped Employees' a weighted overtime rate calculated upon their two (2) different rates of pay.

132.    For example, for the workweek of December 10, 2018 through December 16, 2018, Plaintiff Marcusse worked a total of 45.18 hours. Plaintiff Marcusse was paid $1,077.83 for the first forty (40) hours of work for this workweek. This equates to an hourly rate of $26.95. He was also incorrectly paid $80.83 for the 5.18 overtime hours that he worked or $15.60 per overtime hour. Plaintiff Marcusse, however, should have been paid $209.43 for the 5.18 overtime hours worked as his proper weighted overtime rate was $40.43 per overtime hour. Accordingly, Defendants failed to pay Plaintiff Marcusse the statutorily required overtime rate of one and a half (1½) times his hourly rate for all hours worked in excess of forty (40) per workweek.

133.    Overtime hours were typically worked by Tipped employees during events.

134.    As stated above, the job duties performed by Tipped Employees during non-events were nearly identical to the job duties they performed during events.

135.    Accordingly, throughout the relevant time period, Defendants' failed to pay Tipped Employees the proper overtime rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of FLSA § 207, the NYLL, and NYCRR § 146-1.4.

    c.  <u>Defendants' Failure to Pay Wages/Unlawful Pay Deductions.</u>

136.    From the beginning of the relevant time period to December 30, 2018, Defendants promised Tipped Employees an hourly wage based upon the entire 20% service charge for working events. Thus, Defendants promised to pay Tipped Employees their share of the 20% service charge apportioned upon the hours they each worked during the event.

137.    This promise was a term and condition of the Tipped Employees' employment with Defendants.

138.    Pursuant to this promise, Defendants were to issue the entire 20% service charge to the Tipped Employees who worked the event.

139.    From the beginning of the relevant time period to December 30, 2018, Defendants, however, did not distribute all of the 20% service charge to the Tipped Employees who worked the event. Instead, all or some of the promised 20% service charge was withheld by Defendants and/or issued to non-Tipped employees such as Security Guards.

140.    The non-Tipped employees who received a portion of the 20% service charge were not food service workers and did not directly provide guest services. They were also not tipped employees like Tipped Employees.

141.    Accordingly, throughout the relevant time period, Defendants withheld wages/failed to pay Tipped Employees all owed wages for working events on their regularly scheduled paydays in violation of NYLL § 191, NYLL § 193, and NYCRR § 146-2.7.

   d.   Defendants' Unlawful Tip/Gratuity Retention.

142.    Throughout the relevant time period, Defendants' customers were required to pay a 20% service charge in order to book an event at Defendant Norwood's facility.

143.    The 20% service charge was based on a percentage of the customer's food and beverage bill.

144.    Upon information and belief, throughout the relevant time period, Defendants did not give its customers the proper notices pursuant to the NYLL and NYCRR § 146-2.19 to place them on sufficient notice that the service charge did not constitute a tip/gratuity. Defendants also

did not give its customers the proper notices pursuant to the NYLL and NYCRR § 146-2.19 that the entire 20% service charge would not be distributed to the Tipped Employees.

145.    For example, the customers' receipts solely stated, "Service Charge 20%".

146.    The 20% service charge constituted a tip/gratuity.

147.    Accordingly, Tipped Employees are entitled to the entire 20% service charge as a tip/gratuity for their services to Defendants' guests.

148.    As stated above, however, at no point during the relevant time period did Defendants issue the entire 20% service charge to the Tipped Employees working the event. Instead, Defendants withheld all or some of the 20% service charge and/or issued some of it to non-Tipped employees such as Security Guards.

149.    The non-Tipped employees who received a portion of the 20% service charge were not food service workers and did not directly provide guest services. They were also not tipped employees like Tipped Employees.

150.    Accordingly, throughout the relevant time period, Defendants unlawfully retained/ distributed Tipped Employees' tips/gratuities.

151.    Defendants' unlawful retention/distribution of Tipped Employees' tips/gratuities was in violation of NYLL § 196-d and NYCRR § 146-2.18.

**IV.    DEFENDANTS' VIOLATIONS OF THE FLSA, THE NYLL, AND THE NYCRR WERE WILLFUL.**

152.    Defendants' violations of the FLSA, the NYLL, and the NYCRR were willful.

153.    Defendants have actual knowledge of the statutory requirements of the FLSA, the NYLL, and the NYCRR.

154.    For example, in or around December 2018, Defendant Parson emailed the Tipped Employees regarding the change in Defendants' pay scheme. In this email, she specifically cited the NYLL and the NYCRR.

155.    As for another example, the wage notices issued to Tipped Employees include an overtime rate and were prepared/signed by Defendant Parson.

## V.    FACTS RELATED TO PLAINTIFFS MARCUSSE'S AND PORTOLANO'S UNLAWFUL TERMINATIONS.

156.    In addition to being subjected to Defendants' willful violations of the FLSA, the NYLL, and the NYCRR, Plaintiff Marcusse was unlawfully terminated in violation of the FMLA, the ADA, Title VII, the NYSHRL, and the NYCHRL and Plaintiff Portolano was terminated in violation of the NYLL.

a.    Plaintiff Marcusse's Claims Regarding His Unlawful Termination for Requesting Medical Leave and/or His Qualified Disability.

157.    Upon information and belief, from July 2018 to June 2019, Plaintiff Marcusse worked at least 1,250 hours for Defendants.

158.    Plaintiff Marcusse suffers from chronic kidney stones and has had two (2) surgeries to remove them during his tenure with Defendants.

159.    These kidney stones inhibit Plaintiff Marcusse from performing major life activities such as urinating, sleeping, walking, running, and sitting.

160.    Without surgery, Plaintiff Marcusse was unable to remove the kidney stones from his body.

161.    On April 15, 2019, Plaintiff Marcusse made his first request for medical leave for kidney stone surgery to his Manager, Emma McGuire ("Ms. McGuire").

162.    This request for leave was granted.

163.    On May 30, 2019, Plaintiff Marcusse informed Ms. McGuire that he required a second kidney stone removal surgery on June 6, 2019, and requested approximately four (4) days of medical leave.

164.    Thus, Plaintiff Marcusse's second request for a leave accommodation was finite and not indefinite.

165.    Although this leave was granted, Plaintiff Marcusse was never informed of his rights to take FMLA leave.

166.    On June 7, 2019, a day after the surgery, Defendant Parson emailed Plaintiff Marcusse and informed him that "management" conducted a performance review of him and determined that his employment with Defendants was no longer a good fit because they need a "bar team with laser focus."

167.    Defendant Parson also wrote in her June 7, 2019 email that Norwood was an "'at-will company' and reserve[s] the right to terminate [Plaintiff Marcusse's] employment at any time for any reason."

168.    Accordingly, Plaintiff Marcusse was unlawfully terminated for his request for a reasonable leave accommodation under the ADA, the NYSHRL, and the NYCHRL and/or Defendants terminated Plaintiff Marcusse in retaliation for his request for leave under the FMLA and/or interfered with Plaintiff Marcusse's right to take FMLA leave.

   b.    <u>Plaintiff Marcusse's Claims of Retaliatory Termination For His Complaints of a Hostile Work Environment.</u>

169.    Plaintiff Marcusse was terminated in retaliation for his complaints of a hostile work environment.

170.    On May 14, 2019, a Bartender, Shakhoz Okhunov ("Mr. Okhunov"), made unlawful comments to Plaintiff Marcusse and Oraima (last name unknown), a Hispanic Female Bar-Back.

171.    For example, whenever Plaintiff Marcusse bent over, Mr. Okhunov made sexualized comments about Plaintiff Marcusse's buttocks.

172.    As for another example, Mr. Okhunov, who is not Hispanic, repeatedly called Oraima, "Bonita."

173.    Following his shift, Plaintiff Marcusse complained of Mr. Okhunov's unlawful comments to Ms. McGuire and his other Manager, Josh Reitz ("Mr. Reitz").

174.    In response, Ms. McGuire and Mr. Reitz informed Plaintiff Marcusse not to fill out a harassment complaint form and to "handle" the issue internally by informing Mr. Okhunov that he was offended and to "work it out" with him.

175.    Upon information and belief, no remedial action was ever taken by Defendant Norwood.

176.    Plaintiff Marcusse was terminated less than one (1) month after his complaints of a hostile work environment.

177.    Accordingly, Plaintiff Marcusse was unlawfully terminated in retaliation for his complaints of sexual and racial harassment in violation of Title VII, the NYSHRL, and the NYCHRL.

      c.   <u>Plaintiff Portolano's Claims of Retaliatory Termination For His Complaints of Unpaid Wages.</u>

178.    In or around December 2018, Plaintiff Portolano uncovered that Defendants were not paying him and all other similarly situated Tipped Employees their promised portion of the entire 20% service charge and/or all their tips/gratuities.

179.    At that time, Plaintiff Portolano complained to Defendants about these violations.

180.    Immediately thereafter, in retaliation, Defendants reduced Plaintiff Portolano's shifts from approximately five (5) shits per workweek to approximately one (1) shift per workweek.

181.    Within approximately two (2) weeks after his complaints of Defendants' violations of the NYLL, Plaintiff Portolano was terminated.

182.    The reason given by Defendants for Plaintiff Portolano's termination was performance. However, throughout his employment for Defendants, Plaintiff Portolano was never disciplined, coached, or otherwise warned about any performance issues.

183.    Accordingly, Plaintiff Portolano was terminated in retaliation for his complaints of Defendants' violations of the NYLL and NYCRR in violation of NYLL § 215.

## FLSA COLLECTIVE ACTION ALLEGATIONS

### I.    The FLSA Overtime Collective

184.    Plaintiffs Marcusse, Portolano, and Sperandio seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following Collective:

> All Bartenders, Servers, and Bar-Backs employed by Defendants during the past three (3) years through the final date of disposition of this action, who are or were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

185.    At all relevant times, Plaintiffs Marcusse, Portolano, and Sperandio were similarly situated to all such individuals in the FLSA Overtime Collective[1] because, while employed by Defendants, Plaintiffs Marcusse, Portolano, and Sperandio and all FLSA Overtime Plaintiffs

---

[1]    Hereinafter referred to as the "FLSA Overtime Plaintiffs".

performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

186.    Defendants are and have been aware of the requirement to pay Plaintiffs Marcusse, Portolano, and Sperandio and the FLSA Overtime Plaintiffs at a rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully choose not to.

187.    The FLSA Plaintiffs, are readily discernable and ascertainable. All FLSA Overtime Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

188.    The number of FLSA Overtime Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

189.    All questions relating to Defendants' violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendants' failure to pay statutorily required rate of one and a half (1½) times the FLSA Overtime Plaintiffs' hourly rate for all hours worked in excess of forty (40) per workweek are specific to Plaintiffs Marcusse, Portolano, and Sperandio and the claims asserted by Plaintiffs Marcusse, Portolano, and Sperandio are typical of those of members of the Overtime Collective.

190.    Plaintiffs Marcusse, Portolano, and Sperandio will fairly and adequately represent the interests of the Overtime Collective and have no interests conflicting with the Overtime Collective.

191.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

192.    Plaintiffs Marcusse's, Portolano's, and Sperandio's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

193.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Overtime Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

194.    The questions of law and fact are nearly identical for all FLSA Overtime Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## II.    The FLSA Minimum Wage Collective

195.    Plaintiffs seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following Collective:

> All Bartenders, Servers, Bar-Backs, and Front Desk Employees employed by Defendants during the past three (3) years through the final date of disposition of this action, who are or were not paid the federal minimum wage for all hours worked per workweek during their training periods.

196.    At all relevant times, Plaintiffs were similarly situated to all such individuals in the FLSA Minimum Wage Collective[2] because, while employed by Defendants, Plaintiffs and all

---

[2]      Hereinafter referred to as the "FLSA Minimum Wage Plaintiffs".

FLSA Minimum Wage Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, and were required to train without any compensation.

197.    Defendants are and have been aware of the requirement to pay Plaintiffs and the FLSA Minimum Wage Plaintiffs the federal minimum wage for all hours worked per workweek, yet willfully choose not to.

198.    The FLSA Minimum Wage Plaintiffs, are readily discernable and ascertainable. All FLSA Minimum Wage Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

199.    The number of FLSA Minimum Wage Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

200.    All questions relating to Defendants' violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendants' failure to pay the FLSA Minimum Wage Plaintiffs the federal minimum wage for all hours worked per workweek are specific to Plaintiffs and the claims asserted by Plaintiffs are typical of those of members of the Minimum Wage Collective.

201.    Plaintiffs will fairly and adequately represent the interests of the Minimum Wage Collective and have no interests conflicting with the Minimum Wage Collective.

202.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

203.    Plaintiffs' attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

204.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Minimum Wage Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

205.    The questions of law and fact are nearly identical for all FLSA Minimum Wage Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

### I.    THE NYLL CLASS

206.    Plaintiffs seek to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL and the NYCRR.

207.    The NYLL Class which Plaintiffs seek to define includes:

> All Bartenders, Servers, Bar-Backs, and Front Desk Employees employed by Defendants during the past six (6) years through the final date of disposition of this action, who are or were: (i) subject to unlawful wage deductions; (ii) not paid all of their owed wages on their regularly scheduled paydays; (iii) not paid the New York State minimum wage for all hours worked per workweek during their training periods; (iv) not paid for taking mandatory take home quizzes; (v) not paid the "spread of hours" pay for each day worked in excess of ten (10) hours; (vi) not paid the "call-in" pay for each day they reported for duty; and/or (vii) not issued the proper wage statements and notices pursuant to the NYLL by Defendants.

208.    The number of class members protected by the NYLL and the NYCRR who have suffered under Defendants' violations of the NYLL and the NYCRR as set forth herein, are in

28

excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

209.    All questions relating to the Class's allegations under the NYLL and the NYCRR share a common factual basis with those raised by the claims of Plaintiffs. No claims asserted herein under the NYLL and the NYCRR are specific to Plaintiffs or any proposed NYLL Class member and the claims of Plaintiffs are typical of those asserted by the proposed NYLL Class.

210.    Plaintiffs will fairly and adequately represent the interests of all members of the proposed NYLL Class.

211.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the NYLL Class's allegations that Defendants violated the NYLL and the NYCRR.

212.    The class members of the proposed NYLL Class are readily discernable and ascertainable. Contact information for all members of the proposed NYLL Class[3] is readily available from Defendants since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

213.    Plaintiffs assert these claims on their own behalf as well as on behalf of the NYLL Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

214.    Plaintiffs are able to fairly represent and properly protect the interests of the absent members of the proposed NYLL Class and have no interests conflicting with those of the NYLL Class.

---

[3]      Hereinafter referred to as the "NYLL Plaintiffs".

215.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual NYLL Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

216.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiffs' willingness to proceed against Defendants. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the NYLL Plaintiffs' jobs and continued employment.

217.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed NYLL Class, continued violations of the NYLL and the NYCRR will undoubtedly continue.

218.    Whether Plaintiffs and the NYLL Plaintiffs were: (i) subject to unlawful wage deductions; (ii) paid all of their owed wages on their regularly scheduled paydays; (iii) paid New York State's minimum wage for all hours worked per workweek during their training periods; (iv) paid for taking mandatory take home quizzes; (v) paid the "spread of hours" pay for each day worked in excess of ten (10) hours; (vi) paid the "call-in" pay for each day they reported for duty; and/or (vii) issued the proper wage statements and notices pursuant to the NYLL by Defendants are common questions which can readily be resolved through the class action process.

## II.    THE TIPPED CLASS

219.    Plaintiffs Marcusse, Portolano, and Sperandio seek to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL and the NYCRR.

220.    The Tipped Class which Plaintiffs Marcusse, Portolano, and Sperandio seek to define includes:

> All Bartenders, Servers, and Bar-Backs employed by Defendants during the past six (6) years through the final date of disposition of this action, who are or were: (i) not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) not paid all wages promised to them by Defendants for working events; and/or (iii) not paid all earned tips/gratuities.

221.    The number of class members protected by the NYLL and the NYCRR who have suffered under Defendants' violations of the NYLL and the NYCRR as set forth herein, are in excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

222.    All questions relating to the Tipped Class's allegations under the NYLL and the NYCRR share a common factual basis with those raised by the claims of Plaintiffs Marcusse, Portolano, and Sperandio. No claims under the NYLL and the NYCRR are specific to Plaintiffs Marcusse, Portolano, and Sperandio or any proposed Tipped Class member and the claims of Plaintiffs are typical of those asserted by the proposed Tipped Class.

223.    Plaintiffs Marcusse, Portolano, and Sperandio will fairly and adequately represent the interests of all members of the proposed Tipped Class.

224.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Tipped Class's allegations that Defendants violated the NYLL and the NYCRR.

225.    The class members of the proposed Tipped Class are readily discernable and ascertainable. Contact information for all members of the proposed Tipped Class[4] is readily available from Defendants since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

226.    Plaintiffs Marcusse, Portolano, and Sperandio assert these claims on their own behalf as well as on behalf of the Tipped Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

227.    Plaintiffs Marcusse, Portolano, and Sperandio are able to fairly represent and properly protect the interests of the absent members of the proposed Tipped Class and have no interests conflicting with those of the Tipped Class.

228.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Tipped Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

229.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiffs Marcusse's, Portolano's, and Sperandio's willingness to proceed against

---

[4]        Hereinafter referred to as the "Tipped Plaintiffs".

Defendants. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Tipped Plaintiffs' jobs and continued employment.

230.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Class, continued violations of the NYLL and the NYCRR will undoubtedly continue.

231.    Whether Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs were: (i) paid one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) paid all wages promised to them by Defendants for working events; (iii) paid all earned tips/gratuities are common questions which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. § 207, Made by Plaintiffs Marcusse, Portolano, and Sperandio on Behalf of All FLSA Overtime Plaintiffs**
**(Failure to Pay Overtime)**

232.    Plaintiffs Marcusse, Portolano, and Sperandio and the FLSA Overtime Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

233.    Throughout the period covered by the applicable statute of limitations, Plaintiffs Marcusse, Portolano, and Sperandio and other FLSA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

234.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiffs Marcusse, Portolano, and Sperandio and the FLSA Overtime Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) hours per workweek.

235.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

236.    Defendants' conduct was in violation of the Fair Labor Standards Act, 29 U.S.C. § 207.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law Made and the New York Codes, Rules, and Regulations § 142-1.4 by Plaintiffs Marcusse, Portolano, and Sperandio on Behalf of All Tipped Plaintiffs (Failure to Pay Overtime)**

237.    Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

238.    Throughout the period covered by the applicable statute of limitations, Plaintiffs Marcusse, Portolano, and Sperandio and other Tipped Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

239.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) hours per workweek.

240.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

241.    Defendants' conduct was in violation of the New York Labor Law and the New York Codes, Rules, and Regulations § 146-1.4.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. § 206, Made by Plaintiffs on Behalf of All FLSA Minimum Wage Plaintiffs (Failure to Pay Minimum Wage)**

242.    Plaintiffs and the FLSA Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

243.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Minimum Wage Plaintiffs the statutorily required federal minimum wage for all hours worked per workweek by subjecting them to a mandatory unpaid training period.

244.    Plaintiffs and the FLSA Minimum Wage Plaintiffs are entitled to payment at the statutory federal minimum wage for all hours worked per workweek, including hours worked while training.

245.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

246.    Defendants' conduct was in violation of the Fair Labor Standards Act, 29 U.S.C. § 206.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law § 652 and the New York Codes, Rules, and Regulations § 146-2.7 Made by Plaintiffs on Behalf of All NYLL Plaintiffs
(Failure to Pay Minimum Wage)**

247.    Plaintiffs and the NYLL Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

248.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the NYLL Plaintiffs the statutorily required New York State minimum wage for all hours worked per workweek by subjecting them to a mandatory unpaid training period.

249.    Plaintiffs and the NYLL Plaintiffs are entitled to payment at the statutory New York State minimum wage for all hours worked per workweek, including hours worked while training.

250.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

251.    Defendants' conduct was in violation of the New York Labor Law § 652 and New York Codes, Rules, and Regulations § 146-2.7.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law § 191 Made by Plaintiffs on Behalf of All NYLL and Tipped**
**Plaintiffs**
**(Failure to Timely Pay Wages)**

251.    Plaintiffs and the NYLL and Tipped Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

252.    Throughout the period covered by the applicable statute of limitations, every week Defendants were required to pay Plaintiffs and other NYLL and Tipped Plaintiffs all earned and due wages.

253.    Throughout the period covered by the applicable statute of limitations, Defendants did not pay Plaintiffs and other NYLL and Tipped Plaintiffs all earned and due wages every pay period.

254.    Additionally, throughout the relevant time period, Defendants required Plaintiffs and the NYLL Plaintiffs to engage in training after their employment began.

255.    Throughout the relevant time period, however, Defendants never compensated Plaintiffs and the NYLL Plaintiffs anything for their time spent training.

256.    Further, from the beginning of the relevant time period to December 30, 2018, Defendants were required to pay Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs their prorated portion of the 20% service charge for working events.

257.    From the beginning of the relevant time period to December 30, 2018, Defendants did not pay Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs their prorated portion of the 20% service charge for working events.

258.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

259.    Defendants' conduct was in violation of the New York Labor Law § 191.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law § 193 and the New York Codes, Rules, and Regulations § 146-**
**2.7 Made by Plaintiffs on Behalf of All NYLL and Tipped Plaintiffs**
**(Unlawful Deduction of Wages)**

260.    Plaintiffs and the NYLL and Tipped Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

261.    Throughout the relevant time period, Defendants unlawfully deducted some of Plaintiffs' and the NYLL and Tipped Plaintiffs' earned wages from their paychecks.

262.    Throughout the relevant time period, the deductions made from Plaintiffs' and the NYLL and Tipped Plaintiffs' paychecks were neither authorized nor permissible under the NYLL.

263.    Defendants' conduct was willful and lasted throughout the relevant time period.

264.    Defendants' conduct was in violation of the New York Labor Law § 193 and New York Codes, Rules, and Regulations § 146-2.7.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law § 196-d and the New York Codes, Rules, and Regulations § 146-**
**2.18 Made by Plaintiffs Marcusse, Portolano, and Sperandio on Behalf of All Tipped**
**Plaintiffs**
**(Unlawful Tip/Gratuity Retention/Distribution)**

265.    Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

266.    Throughout the period covered by the applicable statute of limitations, Defendants charged its customers a 20% service charge to host events at Defendant Norwood's facility.

267.    Throughout the period covered by the applicable statute of limitations, upon information and belief, Defendants did not inform its customers that the 20% service charge was not a tip/gratuity or that it was not entirely going to Plaintiffs Marcusse, Portolano, and Sperandio and other Tipped Plaintiffs for servicing guests at the event.

268.    Throughout the period covered by the applicable statute of limitations, Defendants did not distribute all of the 20% service charge to Plaintiffs Marcusse, Portolano, and Sperandio and other Tipped Plaintiffs for working the event.

269.    The 20% service charge constitutes a tip/gratuity for Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs.

270.    Throughout the period covered by the applicable statute of limitations, Defendants withheld all or some the 20% service charge and/or issued all or some of it to employees other than Plaintiffs Marcusse, Portolano, and Sperandio and the Tipped Plaintiffs.

271.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

272.    Defendants' conduct was in violation of the New York Labor Law § 196-d and New York Codes, Rules, and Regulations § 146-2.18.

### AS AND FOR AN EIGHTH  CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law and the New York Codes, Rules, and Regulations § 146.1.6
Made by Plaintiffs on Behalf of All NYLL Plaintiffs
("Spread of Hours" Pay)**

273.    Plaintiffs and the NYLL Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

274.    Defendants knowingly failed to pay Plaintiffs and the NYLL Plaintiffs the statutorily required "spread of hours" pay for each day worked in excess of ten (10) hours.

275.    Plaintiffs and the NYLL are entitled to "spread of hours" pay for each day worked in excess of ten (10) hours.

276.    Defendants knowingly failed to pay Plaintiffs and the NYLL Plaintiffs the "spread of hours" pay for each day worked in excess of ten (10) hours.

277.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

278.    Defendants' conduct was in violation of the New York Labor Law and the New York Codes, Rules, and Regulations § 146-1.6.

### AS AND FOR A NINETH CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law and the New York Codes, Rules, and Regulations § 146-1.5**
**Made by Plaintiffs on Behalf of All NYLL Plaintiffs**
**("Call-In" Pay)**

279.    Plaintiffs and the NYLL Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

280.    Plaintiffs and the NYLL Plaintiffs had irregular schedules that varied from week-to-week.

281.    Plaintiffs and the NYLL Plaintiffs routinely reported for duty at Defendant Norwood's facility and were sent home prior to commencing their shift without any pay for that workday.

282.    Plaintiffs and the NYLL Plaintiffs routinely reported to Defendant Norwood's facility for prescheduled meetings on their days off that lasted less than three (3) hours

283.    Defendants knowingly failed to pay Plaintiffs and the NYLL Plaintiffs the statutorily required "call-in" pay for each day they reported for duty.

284.    Plaintiffs and the NYLL are entitled to "call-in" pay for each day they reported for duty.

285.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

286.    Defendants' conduct was in violation of the New York Labor Law and the New York Codes, Rules, and Regulations § 146-1.5.

**AS AND FOR A TENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law § 195, Made by Plaintiffs on Behalf of All NYLL Plaintiffs**
**(Failure to Provide Proper Wage Statements and Notices)**

287.    Plaintiffs and the NYLL Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

288.    Pursuant to the NYLL, employers are required to furnish employees with every payment of wages a statement that includes, among other things, an accurate wages, accurate, number of hours worked, and the employer's phone number.

289.    Also Pursuant to the NYLL, employers are required to provide employees with a notice at the time of hiring that includes, among other things, tip credits and the employer's telephone number.

290.    Throughout the relevant time period, Defendants' knowingly failed to provide Plaintiffs and the NYLL Plaintiffs with the required wage statements and notices pursuant to NYLL.

291.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

292.    Defendants' conduct was in violation of New York Labor Law § 195.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Family and Medical Leave Act, 29 U.S.C. § 2615**
**(FMLA Retaliation/Interference)**

293.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

294.    On May 30, 2019, Plaintiff Marcusse requested medical leave for kidney stone surgery.

295.    In response to Plaintiff Marcusse's requests for approximately four (4) days of medical leave, Defendants retaliated against Plaintiff Marcusse and/or interfered with Plaintiff Marcusse's rights to FMLA leave.

296.    Defendants retaliated against Plaintiff Marcusse and/or interfered with his right to FMLA leave by terminating him a day after his surgery on June 7, 2019.

297.    Plaintiff Marcusse's termination was in retaliation for his request for FMLA leave.

298.    Defendants' conduct was willful and in violation of the Family Medical Leave Act, 29 U.S.C. § 2615.

### AS AND FOR A TWELFTH CAUSE OF ACTION FOR A VIOLATION OF
### The Americans with Disabilities Act, 42 U.S.C. § 12112
### (Disability Discrimination)

299.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

300.    Plaintiff Marcusse suffers from chronic kidney stones which inhibits him from urinating, sleeping, walking, running, and sitting.

301.    Plaintiff Marcusse has a qualified disability under the ADA.

302.    As a result of Plaintiff Marcusse's kidney stones, on May 30, 2019, Plaintiff Marcusse requested approximately four (4) days of medical leave.

303.    Plaintiff Marcusse's request for medical leave was a request for a reasonable accommodation under the ADA.

304.    On June 7, 2019, Defendant Norwood unlawfully terminated Plaintiff Marcusse in retaliation for his reasonable accommodation request.

305.    Defendant Norwood's conduct was willful and in violation of the Americans with Disabilities Act, 29 U.S.C. § 12112.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York State Human Rights Law § 296**
**(Disability Discrimination)**

306.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

307.    Plaintiff Marcusse suffers from chronic kidney stones which inhibits him from urinating, sleeping, walking, running, and sitting.

308.    Plaintiff Marcusse has a qualified disability under the NYSHRL.

309.    As a result of Plaintiff Marcusse's kidney stones, on May 30, 2019, Plaintiff Marcusse requested approximately four (4) days of medical leave.

310.    Plaintiff Marcusse's request for medical leave was a request for a reasonable accommodation under the NYSHRL.

311.    On June 7, 2019, Defendant Norwood unlawfully terminated Plaintiff Marcusse in retaliation for his reasonable accommodation request.

312.    Defendant Norwood's conduct was willful and in violation of the New York State Human Rights Law § 296.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law § 8-107**
**(Disability Discrimination)**

313.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

314.    Plaintiff Marcusse suffers from chronic kidney stones which inhibits him from urinating, sleeping, walking, running, and sitting.

315.    Plaintiff Marcusse has a qualified disability under the NYCHRL.

316.    As a result of Plaintiff Marcusse's kidney stones, on May 30, 2019, Plaintiff Marcusse requested approximately four (4) days of medical leave.

317.    Plaintiff Marcusse's request for medical leave was a request for a reasonable accommodation under the NYCHRL.

318.    On June 7, 2019, Defendant Norwood unlawfully terminated Plaintiff Marcusse for his reasonable accommodation request.

319.    Defendant Norwood's conduct was willful and in violation of the New York City Human Rights Law § 8-107.

## AS AND FOR A FIFTHTEENTH CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-3
### (Retaliation)

320.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

321.    Plaintiff Marcusse engaged in protective activity by complaining to Defendant Norwood that its conduct violated Title VII by subjecting him and other employees to a sexually and racially hostile work environment.

322.    Defendant Norwood retaliated against Plaintiff Marcusse by terminating him for engaging in a protected activity.

323.    Defendant Norwood's conduct was in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law § 296
### (Retaliation)

324.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

325.    Plaintiff Marcusse engaged in protective activity by complaining to Defendant Norwood that its conduct violated the NYSHRL by subjecting him and other employees to a sexually and racially hostile work environment.

326.    Defendant Norwood retaliated against Plaintiff Marcusse by terminating him for engaging in a protected activity.

327.    Defendant Norwood's conduct was in violation of the New York State Human Rights Law § 296.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York City Human Rights Law § 8-107
### (Retaliation)

328.    Plaintiff Marcusse repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

329.    Plaintiff Marcusse engaged in protective activity by complaining to Defendant Norwood that its conduct violated the NYCHRL by subjecting him and other employees to a sexually and racially hostile work environment.

330.    Defendant Norwood retaliated against Plaintiff Marcusse by terminating for engaging in a protected activity.

331.    Defendant Norwood's conduct was in violation of the New York City Human Rights Law § 8-107.

### AS AND FOR AN EIGHTEENTH  CAUSE OF ACTION FOR A VIOLATION OF
### The New York Labor Law § 215
### (Retaliation)

332.    Plaintiff Portolano repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

333.    Plaintiff Portolano engaged in protective activity by complaining to Defendant Norwood that its conduct violated the NYLL by not paying him and all those similarly situated all their earned wages and tips.

334.    Defendant Norwood retaliated against Plaintiff Portolano by reducing his shifts and subsequently terminating him for engaging in a protected activity.

335.    Defendant Norwood's conduct was in violation of the New York Labor Law § 215.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and all Collective and Class Plaintiffs demand judgment against Defendants as follows:

A.    At the earliest possible time, Plaintiffs should be allowed to give notice of these purported Collectives, or the Court should issue such notice, to all members of the purported Collectives, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages and/or benefits;

B.    Designation of Plaintiffs Marcusse, Portolano, and Sperandio as representatives of the FLSA Overtime Collective defined herein, and Plaintiffs' counsel as Collective Counsel;

C.    Designation of Plaintiffs as representatives of the FLSA Minimum Wage Collective defined herein, and Plaintiffs' counsel as Collective Counsel;

D.    Designation of Plaintiffs Marcusse, Portolano, and Sperandio as representatives of the Fed. R. Civ. P. 23 Tipped Class defined herein, and Plaintiffs' counsel as Class Counsel;

E.    Designation of Plaintiffs as representatives of the Fed. R. Civ. P. 23 NYLL Class defined herein, and Plaintiffs' counsel as Class Counsel;

F.      Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

G.      Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed FLSA Overtime and Minimum Wage Collective members under the FLSA;

H.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed NYLL and Tipped Class members under the NYLL and the NYCRR;

I.      Demand a jury trial on these issues to determine liability and damages;

J.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

K.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law, the New York Codes, Rules and Regulations, the Family Medical Leave Act 29, U.S.C. §§ 2601 *et seq.*, the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, the New York State Human Rights Law, and the New York City Human Rights Law;

L.      All damages which Plaintiffs and all Collective and Class Plaintiffs have sustained as a result of Defendants' conduct, including: (i) back pay for unpaid overtime, unpaid federal/New York State minimum wages, unpaid/deducted wages, withheld tips/gratuities, unpaid "spread of hours" pay, and unpaid "call-in" pay, (ii) liquidated damages, (iii) penalties, and (iv)

general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

M.    All damages which Plaintiff Marcusse has individually sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation and job benefits he would have received but for Defendants' unlawful discriminatory and retaliatory conduct, front pay, liquidated damages, punitive damages, attorneys' fees, interest, and compensatory damages including for emotional distress humiliation, embarrassment, and anguish;

N.    All damages which Plaintiff Portolano has individually sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits he would have received but for Defendants' unlawful retaliatory conduct, liquidated damages, attorneys' fees, and interest;

O.    An award to Plaintiffs and all Collective and Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

P.    An award to Plaintiffs and all Collective and Class Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

Q.    An award to Plaintiffs and all Collective and Class Plaintiffs for the amount of unpaid wages, including interest thereon, liquidated damages subject to proof, and penalties;

R.    Awarding Plaintiffs and all Collective and Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

S.    Pre-judgment and post-judgment interest, as provided by law; and

T.    Granting Plaintiffs and all Collective and Class Plaintiffs other and further relief as this Court finds necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated:        September 9, 2019
              Garden City, New York

                                   Respectfully submitted,

                                   */s/ James A. Vagnini*
                                   James A. Vagnini
                                   Alexander M. White
                                   **Valli Kane & Vagnini LLP**
                                   600 Old Country Road, Suite 519
                                   Garden City, New York 11530
                                   T: (516) 203-7180
                                   F: (516) 706-0248

                                   *Attorneys for Plaintiffs*